UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.: 09-21192-CIV-HUCK/O'SULLIVAN

NCMIC FINANCE CORPORATION
d/b/a PROFESSIONAL SOLUTIONS
FINANCIAL SERVICES,

     Plaintiff,

vs.

BRICAN AMERICA, INC.,

     Defendant.
_____/

## ORDER DENYING CROSS-MOTIONS FOR SUMMARY JUDGMENT

This matter is before the Court on Cross-Motions for Summary Judgment by Plaintiff NCMIC Finance Corp. d/b/a Professional Solutions Financial Services and Defendant Brican America Inc. (Docs. 31 & 50). The Court has reviewed the parties' memoranda and the pertinent portions of the record and finds that there are genuine issues of material fact precluding the entry of summary judgment.

The defendant in this case, Brican America, Inc., markets specialized computer and television screens designed for doctors' offices. In July 2005, Brican and NCMIC entered into a General Vendor Agreement which provided that NCMIC would provide financing for doctors to lease Brican's equipment.[1] Before NCMIC agreed to finance a lease, Brican sent NCMIC financial data and other credit information for the prospective lessee. If NCMIC found the lessee creditworthy it paid Brican about $24,000 up front for the equipment and the lessee agreed to pay NCMIC $508 for 60 months ($30,480).

Paragraph 6(c) of the General Vendor Agreement requires Brican to disclose any other agreements between Brican and the prospective lessees:

> **6. Representations and Warranties: Goods.** With respect to Goods sold hereunder, Brican Warrants that . . .
>
>     **c.** There are no other agreements or warranties given to Lessee relating to the Goods or Leases written or verbal that are not included in the documents given to [NCMIC.]

---

[1] The General Vendor Agreement provides that it is to be governed and construed according to Iowa law.

The Agreement also provides in paragraph 7 that if Brican breaches this warranty then, upon NCMIC's demand, it is to repurchase the leases/goods from NCMIC for the price of the unpaid balance:

> **7. Brican's Breach of Representations and Warranties.** If Brican breaches any representation or warranty herein with respect to a Lease entered into by PSFS, Brican shall repurchase such Lease and/or Goods from PSFS on demand for the unpaid balance due thereon.

Unbeknownst to NCMIC (at least initially), Brican also entered into marketing agreements with the lessees and a third company, Viso Lasik Medspas LLC. NCMIC argues that Brican continually breached the warranty in paragraph 6(c) of the General Vendor Agreement by failing to provide NCMIC with copies of the marketing agreements. According to the marketing agreements, Viso paid the lessees for advertising, but Brican guaranteed the advertising payments and loaned money to Viso. NCMIC demands that Brican repurchase the leases for their unpaid balance pursuant to paragraph 7 of the General Vendor Agreement.

Brican argues that the breach was not material because NCMIC's decision to fund the leases was based solely on the lessees' creditworthiness, NCMIC waived its right to demand that Brican repurchase the leases because it had full knowledge of the marketing agreements but continued funding the leases, and NCMIC is not entitled to specific performance because it has an adequate remedy at law. Brican's position is that NCMIC knew about but was largely indifferent to the marketing agreements, until NCMIC came under pressure from its lender, Wells Fargo, to diversify its loan portfolio. Thus, according to Brican, NCMIC is using the marketing agreement as a pretext to diversify its loan portfolio by reducing the concentration of Brican leases.

Summary judgment is appropriate if the pleadings, depositions, and affidavits show that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue of fact is "material" if it is a legal element of the claim under applicable substantive law which might affect the outcome of the case. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986); *Allen v. Tyson Foods*, 121 F.3d 642, 646 (11th Cir. 1997). An issue of fact is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the non-moving party. *Allen*, 121 F.3d at 646. On a motion for summary judgment, the Court must view all the evidence and all factual inferences drawn therefrom in the light most favorable to the non-

moving party, and determine whether that evidence could reasonably sustain a jury verdict. *Celotex*, 477 U.S. at 322-23; *Allen*, 121 F.3d at 646.

While the burden on the movant is great, the opposing party has a duty to present affirmative evidence in order to defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 252.  A mere "scintilla" of evidence in favor of the non-moving party, or evidence that is merely colorable or not significantly probative is not enough.  *Id.*; *see also Mayfield v. Patterson Pump Co.*, 101 F.3d 1371, 1376 (11th Cir. 1996) (conclusory allegations and conjecture cannot be the basis for denying summary judgment).

As an initial matter, the Court does not believe, as Brican suggests, that NCMIC is seeking specific performance.  The relief requested appears to be in the nature of liquidated damages, or, as NCMIC characterizes it, "stipulated damages," and Brican fails to show good cause why NCMIC is not entitled to the relief provided for in paragraph 7 of the General Vendor Agreement if Brican materially breached the Agreement.  *See, e.g.*, 11 Corbin on Contracts § 55.1 (rev. ed. 2005) ("The parties to a contract can, to a very considerable extent, determine the remedies that shall be available for its enforcement.  This is applicable, to some extent, even with respect to judicial remedies.  To a very large extent, the parties themselves create and control their contractual rights and duties, but in addition to this, the parties can, by provision in the contract itself, create legal privileges and powers, the exercise of which may prevent a breach or harm by one party or may redress a wrong that has already been done.").

Further, upon careful review of the record, it appears that a genuine issue of material fact exists as to whether, as Brican contends, NCMIC waived its right to demand that Brican repurchase the leases.[2]  There is conflicting or equivocal evidence in the record as to when NCMIC learned of the existence of the marketing agreements, NCMIC's understanding of the nature and scope of the agreements (including who was responsible for making the marketing payments to the lessees), whether NCMIC timely demanded that Brican repurchase the leases, and whether the existence of the agreements was material to NCMIC's decision to demand

---

[2] NCMIC argues that Brican should not be permitted to raise the defense of waiver because it was not affirmatively pled in Brican's answer.  However, NCMIC was fully able to respond to the waiver defense in its opposition brief, has adequate notice of the defense to prepare for trial, and has not identified any prejudice resulting from Brican's failure to plead waiver; therefore, Brican should not be precluded from relying on this defense.  *See Proctor v. Fluor Enterprises, Inc.*, 494 F.3d 1337, 1350-51 (11th Cir. 2007); *Hassan v. U.S. Postal Serv.*, 842 F.2d 260, 263 (11th Cir. 1988).

repurchase of the leases or whether, as Brican contends, NCMIC has demanded that Brican repurchase the leases in order to diversify its loan portfolio, a reason unrelated to Brican's alleged breach. *Compare, e.g.*, Cook Dep. (I) 18:7-9 ("We knew that [marketing agreements] existed on some leases. I don't how many that is. It was my understanding if there was [a marketing agreement], [Brican] would provide [it]."), 25:10-12 ("I asked them what was covered, and the explanation I got, it was some."), *and* Thompson Dep. 14:16-24 ("It was my understanding, and this was the way it was explained to me at that time in the beginning . . . . I can go to different companies and market their products and services, and then they were the ones who were in turn paying the marketing dollars back to the [lessee].") *with* Barkley Dep. 36:21-22 ("[Cook] said that he already knew about [the marketing agreements] and that it was okay."), 43:19-46:5 (testifying that Plaintiff stopped financing for Defendant because Defendant's equipment leases exceeded "a certain percentage that was allowed by the company" and not because of the marketing agreements), *and* Vincens Dep. 166:10-25 ("[The marketing agreement] wasn't asked for . . . . I specifically gave a copy to Todd Cook of the marketing agreement . . . . They knew each of the time [sic] we sell the minutes or acknowledging [sic] the time and that we were doing it with the marketing agreement.").

A trial is needed to resolve these factual disputes and determine whether NCMIC waived its right to demand repurchase under paragraph 7 the General Vendor Agreement. *See Cont'l Cas. Co. v. G.R. Kinney Co., Inc.*, 140 N.W. 2d 129, 130 (Iowa 1966) ("Where acts and conduct are relied upon as proof of waiver, the intention of the party charged to waive his rights must clearly appear. The issue of waiver where acts and conduct are relied upon is usually one of fact for the jury, although it is true occasionally where the evidence is not disputed the question becomes one of law for the court."). It is, therefore

ORDERED AND ADJUDGED that Plaintiff's Motion for Summary Judgment (Doc. 31) and Defendant's Motion for Summary Judgment (Doc. 50) are DENIED.

DONE in Chambers, at Miami, Florida, on the 9th day of February, 2010.

_____
Paul C. Huck
United States District Judge

Copies furnished to:
Counsel of Record